10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ROBERT KIRELL, D.P.M.,                                                          X

                                                    Plaintiff,

                              -against-

. UNITED HEALTHCARE INSURANCE COMPANY
OF NEW YORK, UNITED HEALTHGROUP and
INGENIX, INC.

                                                    Defendants.

                              over                                             X

NEW YORK
COUNTY CLERK'S OFFICE

JAN 1 2 2007

NOT COMPARED
WITH COPY FILE

Index No. 076 00114

DATE PURCHASED:
1/12/2007

SUMMONS

To the above named Defendant(s)

**YOU ARE HEREBY SUMMONED** to answer the complaint in
this action and to serve a copy of your answer, or, if the complaint is not served with this
summons, to serve a notice of appearance, on the plaintiff's attorney(s) within (20) days
after the service of this summons, exclusive of the day of service (or within 30 days after
the service is complete if this summons is not personally delivered to you within the State
of New York); and in case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded in the complaint.

Dated:  New York, New York
        January 12, 2006.

                                        Lawrence F. Kobak, DPM, Esq.
                                        ABRAMS, FENSTERMAN, FENSTERMAN,
                                        EISMAN, GREENBERG, FORMATO &
                                        EINGIGER, LLP
                                        *Attorneys for Plaintiff*
                                        ROBERT KIRELL, D.P.M.
                                        220 East 42nd Street, Suite 505
                                        New York, New York 10017
                                        (212) 279-9200

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ROBERT KIRELL, D.P.M.

Index No.:

O 7 6 00/14

Plaintiff,

-against-

**VERIFIED
COMPLAINT**

UNITED HEALTHCARE INSURANCE COMPANY
OF NEW YORK, UNITED HEALTHGROUP and
INGENIX, INC.

Defendant.

-------------------------------------------------------------------X

Plaintiff, ROBERT KIRELL, D.P.M. by his attorneys, ABRAMS,
FENSTERMAN, FENSTERMAN, EISMAN, GREENBERG, FORMATO & EINIGER,
LLP, complaining of the Defendants, as and for their Verified Complaint, set forth and
allege as follows:

## BACKGROUND and

## NATURE OF THE ACTION

This is clearly a case where an insurance carrier, UNITED HEALTH CARE
INSURANCE COMPANY OF NEW YORK, UNITED HEALTHGROUP and its
subsidiary, INGENIX, INC., are either unable to comprehend or are intentionally
disregarding podiatric reality, the podiatric textbooks and podiatric literature in
concluding that minimal incision foot surgery is no longer an acceptable standard of care
and further deeming without any justification it to be "experimental" treatment after
allowing Dr. Kirell's patients to receive it for over ten (10) years and reimbursing

podiatrists and their patients who perform it. ROBERT KIRELL, D.P.M. is a podiatrist performing minimal incision foot surgery and is board certified to do so.

After ten (10) years of reimbursing Dr. Kirell's patients when he performed this type of foot surgery, the defendant, with no forewarning, and allowing Dr. Kirell to continue to treat their enrolled members of UNITED HEALTHCARE INSURANCE COMPANY OF NEW YORK (hereafter, UNITED HEALTHCARE), UNITED HEALTHGROUP (hereinafter (UHG) and INGENIX, INC. (hereafter, INGENIX) suddenly refuse to reimburse Dr. Kirell's patients for foot surgery as of about May, 2006, claiming that the surgery being performed was considered by UNITED HEALTHCARE, UHG and INGENIX, as of on or about May, 2006, "experimental" and unproven after accepting this well recognized surgical procedure for ten (10) consecutive years without exception or expression of concern. During this time to the present, other carriers routinely reimbursed this type of foot surgery including the federal government which does not consider it to be experimental or unproven. Additionally, in contradiction to the CPT accepted coding, the defendants stated to the patients, in its explanation of medical benefits, that Dr. Kirell "misrepresented" the services he rendered by using a different method to perform procedures not listed in the CPT manual". In fact, Dr. Kirell used the accepted CPT codes that accurately described the services performed.

UNITED HEALTHCARE, UHG and INGENIX took the steps of writing to many of the plaintiff's patients requesting phone interviews during which UNITED HEALTHCARE, UHG and/or INGENIX asked various leading questions implying that Kirell was doing something deleterious to their patients in practicing the way that they do. They actually asked the patients if "scopes" were used when the surgery was

performed despite there being no representation to anyone at anytime that the surgery they were performing was accomplished arthroscopically or with any other type of scope. The type and length of incision was also questioned by the defendants when talking with the doctor's patients. Multiple patients were made suspicious and mistrustful of the procedures performed on them as a result of the nature of the questions asked by the defendants.   Some patients cancelled future surgery, stopped visiting Dr. Kirell, as a result of theses phone interviews and the verbiage of why payment was denied on the explanation of medical benefit provided by the defendants to their subscribers.

The technique of foot surgery that was being performed by Dr. Kirell is fully recognized by the federal government's National Guideline Clearinghouse website. Major health insurance companies as well as Medicare provide the reimbursement for this technique of minimal incision foot surgery practiced by the plaintiffs. Additionally, this technique of surgery is currently being taught in major teaching institutions and as well, Dr. Kirell has been authorized by the New York State Education Department to teach this surgical technique to other practitioners for continuing podiatric medical educational credits. The Academy of Ambulatory Foot and Ankle Surgery, an institution advocating this surgical technique is also authorized by the New York State Education Department to teach and provide Continuing Podiatric Medical Educational credits in the State of New York for lectures and hands on seminars teaching the minimal incision surgical techniques to podiatrists licensed in the State of New York.

To add to their maliciousness, and abusive conduct, UNITED HEALTHCARE, UHG and INGENIX, reported in bad faith, Dr. Kirell to the New York State Office of

Professional Discipline (hereinafter, OPD) on six (6) surgical cases although the patients themselves had no issues with the surgery performed. The OPD after reviewing the six records did not even need to interview Dr. Kirell in this matter before ending their investigation, finding no reason to pursue any action. A closure letter was then provided by the OPD to Dr. Kirell. Unbelievably, knowing that Dr. Kirell is a licensed doctor of podiatric medicine, UNITED HEALTHCARE, UHG and INGENIX applied orthopedic surgical standards of care, refused to recognize provided peer reviewed podiatric scholarly articles provided which were sent to the carrier in good faith to review the care rendered and used an expert reviewer unknowledgeable and without appropriate credentials in percutaneous minimal incision foot surgery. UNITED HEALTHCARE, UHG and INGENIX, knowingly and wantonly, demanded the Dr. Kirell's records in every patient's treatment that was submitted for reimbursement, fully knowing that even though Dr. Kirell submitted the requested documentation, they were going to deny payment which they have done in every case which has continued to date, notwithstanding that each and every patient, of which to date, there have been approximately twenty-five (25), and continuing, has received the exemplary surgical care rendered by Kirell. In an attempt to skirt the "45 day prompt pay law, and aid in increasing "their bottom line", UNITED HEALTHCARE, UHG and INGENIX have cleverly attempted an "end run around" of the prompt pay law by requesting all the records of nearly every patient that the plaintiffs submit bills to for services rendered. This nonpayment of surgical claims by the defendant, UNITED HEALTHCARE, UHG and INGENIX have had a deleterious effect on his practice of

4

podiatry. The bad faith reporting of Dr. Kirell cost him time, money as well as injury to his reputation as a board certified podiatric surgeon.

## THE PARTIES

1.      Plaintiff, ROBERT KIRELL, D.P.M., is a board certified podiatrist and is licensed to practice podiatry in the State of New York.

2.      Dr. Kirell   maintains and did maintain during the time in question, a podiatry practice located at 146 Manetto Hill Road, Plainview, New York 11803.

3.      Upon information and belief, defendants,   UNITED HEALTHCARE INSURANCE COMPANY OF NEW YORK is a corporation organized under and pursuant to the laws of the State of New York, which maintain their principal place of business in New York Metropolitan area at 2 Penn Plaza, 7th Floor, New York, NY 10121.

4.      Upon information and belief, defendants, UNITED HEALTHGROUP is a foreign corporation performing ongoing and continuing business in the State of New York, and maintains their principal place of business for the metropolitan New York area, at 2 Penn Plaza, 7th Floor, New York, NY 10121.

5.      INGENIX is a foreign business corporation that is a subsidiary of UNITED HEALTHGROUP, that amongst other services, provides reviews of podiatric physicians' bills and records. Through its own action and its parent company, UNITED HEALTHGROUP, it performs ongoing and continuing business in the State of New York.   The New York State Department of State lists CT Corporation System as its registered agent, located at 111 Eighth Avenue, New York, NY, 10011.

5

patients since the 1990's.

## CHRONOLOGY OF EVENTS

12.    Dr. Kirell has been non-participating doctors with United Healthcare since they started accepting patients with that health insurance coverage.

13.    Thereafter the patient/enrollee, contractually obligated to pay insurance premiums in exchange for the Defendants access to and payment of health services, expressly assigned their right to receive payment to Dr. Kirell.

14.    Patients of Dr. Kirell have routinely been reimbursed by United Healthcare for services performed by him, using the minimal incision technique for over ten (10) years.

15.    On or about February 2006, United HealthCare reported Dr. Robert Kirell to the Office of Professional Discipline for his care and treatment of six patients.

16.    On May 2, 2006, after examining the patient records, the Office of Professional Discipline closed the matter without so much as even interviewing Dr. Kirell.

17.    Starting on or about May 2006, UNITED HEALTHCARE, UHG and INGENIX, stopped reimbursing the patients of all the defendants for podiatric services that were rendered in good faith and were medically necessary.

18.    UNITED HEALTHCARE, UHG and INGENIX actually issued a stop payment on patients' reimbursement checks during this period.

19.    UNITED HEALTHCARE, UHG and INGENIX, labeled the surgery performed by the plaintiffs as experimental and unproven.

20.   UNITED HEALTHCARE, UHG and INGENIX, in letters to patients, have been denying reimbursement "because there is evidence that services have been misrepresented".

21.   UNITED HEALTHCARE, UHG and INGENIX, in letters to patients, denied reimbursement due to the plaintiff's using a "different method to perform procedures not listed in the CPT manual".

22.   UNITED HEALTHCARE, UHG and INGENIX, in letters to patients, claimed "Minimally Invasive Percutaneous Foot Surgery is unproven for foot surgeries such as bunionectomy and hammertoe repair due to the lack of clinical evidence of safety and/or efficacy in published peer-reviewed literature".

23.   Verbal representations were made by representatives of UNITED HEALTHCARE, UHG and INGENIX, to their subscribers and patients of the plaintiffs, that were consistent with the representations in paragraphs 21-24 *supra*.

24.   After attempting to amicably settle the matter concerning nonpayment of podiatric services with UNITED HEALTHCARE, UHG and INGENIX, the plaintiffs' attorneys received a letter dated December 14, 2006 stating that the procedures that the plaintiffs are performing are not consistent with the American Association of Orthopedic Surgeons, an organization of non-podiatrists, and not consistent with Campbell's Operative Orthopedics, 10th edition, a book written for and by orthopedists.

25.   The standard of care for doctors of podiatric medicine is neither written nor determined by orthopedists.

26.    The current practice guidelines of the type of surgery performed by plaintiffs are published in the federal government's website, the National Guideline Clearinghouse, and they are current.

## AS AND FOR A FIRST CAUSE OF ACTION

### FRAUD

27.    Plaintiff repeats, reiterates and re-alleges the facts and allegations recited in paragraphs 1 through 26, as if fully set forth herein.

28.    UNITED HEALTHCARE, UHG and INGENIX, intentionally refused to pay their subscribers and knowingly and intentionally prepared explanations of benefits forms for denial of payment to its subscribers.

29.    UNITED HEALTHCARE, UHG and INGENIX's preparation and/or facilitation of said explanations of medical benefits forms, as described above, were intentional material misrepresentations that UNITED HEALTHCARE, UHG and INGENIX, made for the purpose of inducing the plaintiffs' reliance the defendants.

30.    These fraudulent acts included submitting denials for the reasons including, but not limited to the reasons stated in paragraphs 21-24, *supra*.

31.    UNITED HEALTHCARE UHG and INGENIX's preparation of said explanation of medical benefits, as described *supra*, were intentional material misrepresentations by the defendants which the plaintiffs and their patients justifiably and detrimentally relied upon to be truthful and accurate at the time the surgery in order that reimbursement could be made to said patients.

9

32.      By reason of the foregoing, UNITED HEALTHCARE, UHG and INGENIX, have defrauded the plaintiffs and the plaintiffs suffered damages in the amount of at least $250,000 dollars, and continuing, plus interest and $50 million dollars in punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

33.      Plaintiff repeats, reiterates,  and re-allege the facts and allegations recited in paragraphs 1 through 32, as if fully set forth herein.

34.      The plaintiff in good faith performed a total of at least $250,000 Dollars worth of surgical services on subscribers of UNITED HEALTHCARE, UHG and INGENIX, for which his patients were not reimbursed by UNITED HEALTHCARE, UHG and INGENIX.

35.      As a result of  UNITED HEALTHCARE, UHG and INGENIX's, preparation of false explanations of medical benefits, UNITED HEALTHCARE, UHG and INGENIX,  did not have to pay its subscribers the reimbursement that they would have been due if  UNITED HEALTHCARE, UHG and INGENIX,  had prepared the Explanations of Medical Benefits correctly. Absent this improper conduct, the plaintiffs would have received the proper payment for the surgical services that were rendered.

36.      The plaintiffs reasonably expected that  UNITED HEALTHCARE, UHG and INGENIX, would correctly complete the Explanations of Medical Benefits and approve the payment for his submitted claims for his podiatric services and care.

37.      UNITED HEALTHCARE, UHG and INGENIX,  refused to pay the

plaintiffs or its subscribers the reasonable value of payments for the services rendered by the plaintiffs to UNITED HEALTHCARE, UHG and INGENIX's subscribers by improperly preparing the explanations of medical benefits.

38.    By reason of the foregoing, UNITED HEALTHCARE, UHG and INGENIX, have been unjustly enriched by the sum of at least $235,000 Dollars and continuing, plus interest, which represents the fair and reasonable value of payments that should have been made by UNITED HEALTHCARE, UHG and INGENIX, and $50 million dollars in punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

## TORTIOUS INTERFERENCE OF CONRACT

39.    Plaintiff repeats, reiterates and re-alleges the facts and allegations recited in paragraphs 1 through 38, as if fully set forth herein.

40.    The plaintiffs have agreements with their patients by which they have paid for their insurance benefits and in return, they have received their care and treatment.

41.    UNITED HEALTHCARE, UHG and INGENIX, were aware of the fact that the plaintiff had agreements with their patients that were subscribers of UNITED HEALTHCARE and UHG.

42.    As a result of UNITED HEALTHCARE, UHG and INGENIX's fraudulent payments practices, UNITED HEALTHCARE, UHG and INGENIX, intentionally failed to reimburse their subscribers the appropriate amount of money due them, in turn infringing on the plaintiffs' patients' implied contractual obligations with the plaintiffs.

43.    As a result of the foregoing, the plaintiffs have suffered damages in the

11

amount of at least $250,000 Dollars and continuing plus interest plus punitive damages of $50 million dollars.

## AS AND FOR A FOURTH CAUSE OF ACTION

## VIOLATION OF P.H.L. §4406 d

44.     Plaintiffs repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 43 in the same manner and with the same force and effect as if hereinafter set forth at length.

45.     Section 4406-d of the Public Health Law provides due process protection for health care providers participating in health maintenance organizations ("HMOs") such as Dr. Kirell, Dr. Weisenthal and Medtech Podiatry, PLLC.

46.     Section 4406-d(4) provides:

The health care plan shall consult with health care professionals in developing methodologies to collect and analyze health care professional profiling data. Health care plans shall provide any such information and profiling data and analysis to health care professionals. Such information, data or analysis shall be provided on a periodic basis appropriate to the nature and amount of data and the volume and scope of the services provided. Any profiling data used to evaluate the performance or practice of a health care professional shall be measured against stated criteria and an appropriate group of health care professionals using similar treatment modalities serving a comparable patient population. Upon presentation of such information or data, each health care professional shall be given the opportunity to discuss the unique nature of the health care professional's patient population which may have a bearing on the health care professional's profile and to work cooperatively with the health care plan to improve performance." (emphasis added)

47.     Further, Section 4406-d(2)(c) requires that the hearing panel include at least one "clinical peer in the same discipline and the same or similar specialty as the health care professional under review."

12

48.    It is clear that the defendants did not attempt to engage Dr. Kirell in any type of meaningful dialogue concerning the findings of the purported review prior to their refusal to pay for services rendered by the plaintiffs.

49.    Further, plaintiff has unsuccessfully on numerous occasions requested documentation, analysis and information as to the rationale for UNITED HEALTHCARE, UHG and INGENIX,'s continuous denial of plaintiffs' medically necessary services, even after having provided any and all requested records and when he in turn provided literature and documentation supporting the medical necessity of the MIS procedures.

50.    On numerous occasions and with respect to multiple patients in which UNITED HEALTHCARE, UHG and INGENIX, wrongfully denied and/or withheld reimbursement due to the alleged experimental/unproven/inefficacious nature of the MIS percutaneous procedures, UNITED HEALTHCARE, UHG and INGENIX, employed their podiatric expert, Dr. Kenneth Meisler, who did not have the requisite training, skill or competence to perform the Percutaneous MIS technique, in violation of Public Health Law 4406-d(4).

51.    Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX's podiatric expert, Dr. Meisner and any other reviewers, because he (they) did not have requisite training or knowledge to perform or review Percutaneous MIS procedures, and because he (they) was (were) familiar with the fact that plaintiff's podiatric services did not involve fraud, over-utilization and improper coding or any other malfeasance, displayed bias and bad faith in his (their) review of plaintiff's services while working at UNITED HEALTHCARE, UHG and INGENIX..

13

52.   UNITED HEALTHCARE, UHG and INGENIX, violated their obligations under Public Health Law 4406-d(4) and did not provide the plaintiff with its methodologies and analysis of health care professional profiling data, and/or any documentation as to the credentials of its podiatric expert(s).

53.   UNITED HEALTHCARE, UHG and INGENIX, have violated their obligations under Public Health Law 4406-d(4) in its alleged audit/review of Dr. Kirell in that UNITED HEALTHCARE, UHG and INGENIX, did not provide them with an opportunity to discuss the unique nature of their patient population which may have a bearing upon the health care professionals' profile.

54.   UNITED HEALTHCARE, UHG and INGENIX, have failed to comply with any of the requisite due process for plaintiff to challenge any of UNITED HEALTHCARE, UHG and INGENIX,'s determinations with respect to his claims.

55.   By virtue of the foregoing, defendant is liable to plaintiff for compensatory damages in an amount to be ascertained at trial and which plaintiffs presently estimates to be at least $250,000 Dollars and continuing plus interest plus punitive damages of $50 million dollars.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF PUBLIC HEALTH LAW 4900, ET SEQ

56.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 55 in the same manner and with the same force and effect as if hereinafter set forth at length.

57.   Section 4910 of the Public Health Law establishes the right to an external appeal when the "health care plan has rendered a final adverse determination with respect

14

to such health care service or both the plan and the enrollee have jointly agreed to waive any internal appeal."

58. Section 4903 of the Public Health Law further mandates that notice of a final adverse determination made by a utilization review agent must be in writing and must include the reasons for the clinical determination, "including the clinical rationale, if any" and instructions on "how to initiate standard and expedited appeals pursuant to section forty-nine hundred four and an external appeal pursuant to section forty-nine hundred fourteen of this article."

59. Section 4914 provides that the enrollee shall have forty-five (45) days after receipt of the final adverse determination from the health care plan to initiate an external appeal.

60. Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX, have failed to provide plaintiff with a final adverse determination in accordance with Section 4900, et seq of the Public Health Law.

61. Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX, have failed to provide plaintiff with the proper notice required under Section 4900, et seq of the Public Health Law including the clinical rationale behind the adverse determination and instructions for an expedited appeals and external appeals.

62. Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX, have failed to provide plaintiff with a final adverse determination of its clinical determination to preclude Plaintiff from pursuit of their external appeals rights.

63. Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX, have failed to comply with any of the requisite due process for plaintiff to

challenge any of UNITED HEALTHCARE, UHG and INGENIX,'s determinations with respect to his claims.

64.   Upon information and belief, UNITED HEALTHCARE, UHG and INGENIX, have also violated its internal policies stating that all appeal determinations whether through standard or expedited internal appeal, will be in writing, will include the clinical rationale for a written denial, and will include instructions detailing, among other things, the eligibility of the enrollee for an external appeal.

65.   By virtue of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be ascertained at trial and which plaintiffs presently estimate to be at least $250,000 Dollars and continuing and for punitive damages in the amount of $50 million dollars.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

66.   Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 65 in the same manner and with the same force and effect as if hereinafter set forth at length.

67.   By entering into an agreement with plaintiffs, holding itself out to the public as a health insurance company and requiring accurate reporting of services from plaintiffs as providers of covered services, defendants, UNITED HEALTHCARE, UHG and INGENIX, assumed a duty of good faith and fair dealing toward plaintiffs.

68.   The agreement contains an implied promise that the defendant would deal fairly and in good faith with plaintiffs, and would do nothing to injure, frustrate and/or

16

interfere with plaintiff's rights to receive the benefits of the agreement, including, (1) the right to payment for services provided there-under from their patients by reasonably relying on their patients being reimbursed by their healthcare insurer and (2) the right to review the clinical criteria used in the determination not to reimburse the plaintiff.

69.    Defendants by their actions have acted in bad faith and outside the scope of the contractual relationship between the parties.

70.    UNITED HEALTHCARE, UHG and INGENIX's, podiatric expert(s) and agents), Dr. Meisler, et al., who has (have) inadequate/no training, knowledge and skill regarding the Percutaneous MIS technique utilized by the plaintiffs, and was (were) familiar with the fact that services rendered by plaintiffs involve no fraud, inappropriate coding or other malfeasance, conducted the audit/review of plaintiffs' records submitted to UNITED HEALTHCARE, UHG and INGENIX, in bad faith and engaged in unfair claims practices. By these actions, defendant breached its duty of good faith and fair dealing.

71.    Defendants breached their duty of good faith and fair dealing to plaintiff by failing to approve payments for the plaintiff's surgical services even though defendant knew that plaintiff was entitled to reimbursement as evidenced by years of prior payment.

72.    Defendants breached their duty of good faith and fair dealing to plaintiff by claiming without basis, after years of paying for their services, that plaintiffs' services were not medically necessary, unproven, not safe, experimental and/or inefficacious.

73.    Defendants breached their duty of good faith and fair dealing to plaintiff by, upon information and belief, suspending payment to plaintiff's patients and

defendants wrongful withholding of payment, unfair settlement tactics and improper delay in payment of his claims.

74.     Defendants breached their duty of good faith and fair dealing to Dr. Kirell by, upon information and belief, falsely reporting to OPD that Dr. Kirell had engaged in fraudulent activity and improper care and treatment of his patients.

75.     Based upon the foregoing, the plaintiff has suffered damages including (1) loss of sums due and owing for medical services provided under the patients' arrangements/agreements with the plaintiff exceeding $250,000 Dollars plus interest and continuing; (2) loss of patients and a client base which plaintiffs have developed throughout his practice and which plaintiffs had a reasonable expectation of increasing, causing them damages in an amount to be determined at trial, but which is not less than $2 million dollars and (3) consequential damages arising from the effect of the suspension of payment and from any defamatory statements to patients of Dr. Kirell in an amount to be determined at trial.

76.     In addition to the foregoing, as a consequence of the severity of Defendants' actions, and as a matter of public policy, so as to deter other entities from engaging in similar actions against physicians, Dr. Kirell is entitled to punitive damages in the sum of at least $50 million dollars.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## VIOLATION OF THE PROMPT PAYMENT LAW

77.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1

through 76 in the same manner and with the same force and effect as if hereinafter set forth at length.

78.   Pursuant to Section 3224-a(a) of the Insurance Law (the "Prompt Payment Law"), a health insurer "shall pay the claim to a policyholder or covered person or make a payment to a health care provider within forty-five days of receipt of a claim or bill for services rendered."

79.   Further, Section 3224-a(b) provides that, where there is a good faith dispute regarding the benefits covered or the manner in which the services were performed, and the insurer receives all requested information, the insurer must make payment of any undisputed portion to the provider within forty-five days.

80.   Plaintiff has submitted claims to UNITED HEALTHCARE, UHG and INGENIX, with all of the proper information and coding required for reimbursement of these medically/surgically necessary services he provided.

81.   When UNITED HEALTHCARE, UHG and INGENIX, questioned these services as not being "medically necessary"/experimental/inefficacious/unsafe, plaintiff provided any and all materials requested by defendants .

82.   Despite the receipt of any and all necessary records to resolve any good faith dispute that UNITED HEALTHCARE, UHG and INGENIX, may have with the services rendered by plaintiff, UNITED HEALTHCARE, UHG and INGENIX, continued and in bad faith to refuse to pay their subscribers for claims submitted many months ago.

83.   UNITED HEALTHCARE, UHG and INGENIX, have unreasonably delayed prompt payment of plaintiff's claims, causing him to sustain financial hardship.

84.    UNITED HEALTHCARE, UHG and INGENIX, have knowingly and intentionally refused to pay claims without conducting a proper investigation, have failed to promptly settle the claims within a reasonable time after receipt of all the requested medical records, and has not attempted in good faith to effectuate a prompt, fair and equitable settlement of plaintiff's insurance claims.

85.    UNITED HEALTHCARE, UHG and INGENIX, have violated the New York State Prompt Payment Law by unreasonably and in bad faith withholding payment for claims submitted by plaintiff as the defendants have forestalled payment for numerous months, and certainly longer than the forty-five (45) days as required by law.

86.    Each refusal of UNITED HEALTHCARE, UHG and INGENIX, to reimburse plaintiffs for claims submitted for medical services rendered constitutes a separate violation of the statute.

87.    Plaintiff is entitled to payment of the full amount of each claim, as well as statutory interest in an amount to be fully determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## QUANTUM MERUIT

88.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 87 in the same manner and with the same force and effect as if hereinafter set forth at length.

89.    Defendants' refusal to compensate plaintiff's patients for services rendered by plaintiffs and which plaintiffs reasonably relied upon to be reimbursed by their patients for the above-described medical services/services, entitle plaintiff to the

reasonable value of the services performed in good faith and accepted by UNITED HEALTHCARE, UHG and INGENIX. The value of the unpaid services to date is in excess of $250,000 Dollars and continuing. Accordingly, an amount exceeding $250,000 Dollars plus interest and continuing, at the maximum rate provided by law, is immediately due and owing to plaintiffs. To the extent that additional claims still still being processed by UNITED HEALTHCARE, UHG and INGENIX, are still being improperly denied and thus causing plaintiffs not to be reimbursed for valid and medically necessary services rendered, plaintiffs' damage calculation will increase.

90.     As a result of the foregoing breaches of defendant's obligations, plaintiffs are entitled to compensatory and consequential damages in the sum of at least $250,000 Dollars and continuing plus interest, with the exact amount to be proven at trial, and punitive damages of $50 million dollars.

## AS AND FOR A NINTH CAUSE OF ACTION
## FOR BAD FAITH REPORTING TO THE STATE LICENSING BOARD

91.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 90 in the same manner and with the same force and effect as if hereinafter set forth at length.

92.     Section PHL §4505-b of the State of New York states in relevant part:

An organization shall make a report to be made to the appropriate professional disciplinary agency within thirty days of obtaining knowledge of any information that reasonably appears to show that a health professional is guilty of professional misconduct as defined in Article 131 or 131-A of the Education Law. (PHL §4405-b(1)(b)).

21

Any person, facility, organization, or corporation which makes a report pursuant to this section *in good faith without malice* shall have immunity from any liability, civil or criminal, the good faith of any person required to make a report shall be presumed. (PHL §4405-b(3)(b)).

93.    Upon information and belief, by falsely reporting to OPD that Dr. Kirell had engaged in fraudulent activity/inappropriate treatment of patients, without even appropriately reviewing the podiatric records, defendant engaged in bad faith and with actual malice and is, therefore, subject to civil damages by virtue of said report.

94.    The report made by UNITED HEALTHCARE, UHG and INGENIX, that Dr. Kirell had engaged in any type of fraudulent activity/inappropriate care and treatment of his patients was false and was clearly motivated by malice.

95.    The OPD dismissed all six complaints, with a letter of closure, without so much as interviewing Dr. Kirell. There was no basis for the complaints lodged by UNITED HEALTHCARE, UHG and INGENIX, and they knew it, or should have known it.

96.    Upon information and belief, the acts of UNITED HEALTHCARE, UHG and INGENIX, as described within were malicious and were undertaken with knowledge that the report was false or with reckless indifference as to the falsity of the statements made.

97.    The false statements made by UNITED HEALTHCARE, UHG and INGENIX, to OPD about Dr. Kirell were damaging to Dr. Kirell's business and professional reputation.

98.    Upon information and belief, the acts of UNITED HEALTHCARE, UHG and INGENIX, in falsely reporting to OPD that Dr. Kirell had engaged in any type of

22

fraudulent activity were done with actual malice and without any justification, solely for the purpose of causing injury to the plaintiff, Dr. Robert Kirell.

99.     By virtue of the foregoing, defendant, UNITED HEALTHCARE, UHG and INGENIX, is liable to plaintiff, Dr. Robert Kirell, for compensatory damages in an amount to be ascertained at trial and which plaintiff, Dr. Robert Kirell, presently estimates to be at least $1,000,000 dollars, and for punitive damages in the amount of $50 million dollars.

## AS AND FOR A TENTH CAUSE OF ACTION

## PRIMA FACIE TORT

100.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of the complaint herein marked and designated as 1 through 99 in the same manner and with the same force and effect as if hereinafter set forth at length.

101.    UNITED HEALTHCARE, UHG and INGENIX, intentionally inflicted harm upon the plaintiff by refusing without a good faith basis, to reimburse his subscribers for covered services rendered by the plaintiffs.

102.    UNITED HEALTHCARE, UHG and INGENIX, had no excuse or justification in intentionally inflicted harm upon plaintiffs.

103.    UNITED HEALTHCARE, UHG and INGENIX, by an act or series of acts that would otherwise be lawful, inflicted harm upon plaintiffs.

104.    UNITED HEALTHCARE, UHG and INGENIX,'s aforementioned acts resulted in special damages to the plaintiffs as delineated *supra*.

105.   UNITED HEALTHCARE, UHG and INGENIX's, aforementioned acts were governed by malevolence as demonstrated by its history of reimbursement of said claims and the reporting of Dr. Kirell to OPD in bad faith.

106.   By virtue of the foregoing, defendant, UNITED HEALTHCARE, UHG and INGENIX, is liable to plaintiffs  for compensatory damages in an amount to be ascertained at trial and which plaintiff, Dr. Robert Kirell, presently estimates to be at least $250,000 Dollars, and for punitive damages in the amount of $50 million dollars.

WHEREFORE, plaintiffs respectfully requests that judgment be entered as follows:

a.   That plaintiff be awarded compensatory and consequential damages in the sum of at least $250,000 Dollars on each of his causes of action, the exact amount to be proven at trial; except the ninth cause of action, for which plaintiff be awarded $1,000,000 Dollars in compensatory and consequential damages.

b.   That plaintiff be awarded punitive damages in the sum of at least 50 million dollars on each of their causes of action;

c.   Granting plaintiff reasonable attorney's fees together with costs and disbursements of this action;

d.   Granting such other and further relief this Court deems just and proper.

Dated: New York, New York
January 12, 2007

Lawrence F. Kobak, DPM, Esq.
ABRAMS, FENSTERMAN, FENSTERMAN,

24

Index No.  *O 7 6 0 0 114*

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

ROBERT KIRELL, D.P.M.,

Plaintiff,

-against-

UNITED HEALTHCARE INSURANCE COMPANY
NEW YORK, UNITED HEALTHGROUP and
INGENIX, INC.

Defendants.

## SUMMONS & VERIFIED COMPLAINT

### ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, GREENBERG, FORMATO & EINIGER LLP
*Attorneys for Plaintiff*
220 East 42nd Street, Suite 505, New York, NY 10017
(212) 279-9200

TO:

Signature (Rule 130-1.1-a)

*Lawrence F. Kobak*

Lawrence F. Kobak, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of

Removal was served upon counsel for Plaintiff, Lawrence F. Kobak DPM, Esq., by regular U.S.

mail, postage prepaid, this 8th day of February, 2007 upon the following:

> Lawrence F. Kobak, DPM, Esq.
> ABRAMS, FENSTERMAN,
> FENSTERMAN, EISMAN,
> GREENBERG, FORMATO &
> EINGIGER, LLP
> Attorneys for Plaintiff
> 220 East 42nd Street, Suite 505
> New York, New York 10017
> (212) 279-9200

Michelle J. d'Arcambal

6